IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD M. VAN PELT, # R-00514, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-1226-SMY |
| ) | |
| KIMBERLY BUTLER, ) | |
| CAMERON WATSON, ) | |
| K. BRIDGES, ) | |
| JOHN DOE (Correctional Officer), ) | |
| and OFFICER MAYOR, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Ronald Van Pelt, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff raises several claims which arose while he was housed at Menard Correctional Center ("Menard"), including interference with his religious practice, placement in an unsanitary cell, and deprivation of his legal property. The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

1

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).

An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A. Because the Court also finds that the surviving claims are not properly joined in the same action, one Count will be severed into a new case.

## The Complaint

Plaintiff's claims date back to November and December 2015. On November 28, 2015, Plaintiff was in his cell and in the middle of his Islamic Salah prayer, when Defendant Lt. Mayor interrupted his prayers. (Doc. 1, pp. 4-5). Despite the fact that Plaintiff was obviously praying on his prayer rug, Mayor repeatedly called out to Plaintiff, ordering him to abandon his prayer and to answer him or "there would be consequences." *Id.* Plaintiff continued praying and when he finished, asked Mayor to state his business. Mayor told Plaintiff to cuff up and took him to segregation.

Also on November 28, 2015, Plaintiff was placed in a segregation cell that was contaminated with feces all over the cell walls, and urine on the floor. The water in the cell was not working. (Doc. 1, p. 5). Plaintiff was not given any bedding or a pillow for over 72 hours. He complained about the conditions to John Doe Correctional Officer (who shall be designated herein as John Doe #1), but the officer said he was not responsible for Eight Gallery, and Plaintiff would have to talk to the gallery C/O. Plaintiff did not receive his bedding, pillows, or clothing until December 26, 2015.

On November 30, 2015, Defendant Cameron Watson denied Plaintiff permission to visit with his mother and 2 sisters, claiming that they were trespassing on state property. Plaintiff disputes that they could have been trespassing, and complains that he was denied due process when the visit was denied. (Doc. 1, p. 5; Doc. 1-1, pp. 6-9).

That same day, Defendant K. Bridges gave Plaintiff an investigative status ticket for a major infraction. (Doc. 1, p. 5; Doc. 1-1, p. 10). Plaintiff asserts that according to prison regulations, a prisoner who receives an investigative report shall be interviewed within 14 days, and be allowed to present his views regarding the investigative placement. He alleges was never

given an interview during the entire time he was in segregation (from November 28 – December 28, 2015). (Doc. 1, p. 5).

Plaintiff's legal property was delivered to him in segregation on December 15, 2015, by John Doe (Badge # 10789), the personal property C/O. (Doc. 1, p. 6). By that time, Plaintiff had been in segregation for 18 days without his legal materials. He claims that his rights were violated because legal paperwork is required to be restored to a prisoner within 72 hours of his placement in segregation. John Doe (Badge # 10789) also gave Plaintiff his other personal property items. However, Plaintiff's prayer rug, Qur'an and Kufi were missing. (Doc. 1, p. 6). The John Doe officer told Plaintiff he would return in a few minutes with Plaintiff's religious items, but he never did so.

On December 26, 2015, the "property C/O John Doe returned" to bring Plaintiff his laundry bag and clean clothing.[1] However, he still did not bring the prayer rug, Qur'an, or Kufi, which Plaintiff pointed out to him. The following day, the John Doe officer brought Plaintiff's prayer rug to him. Plaintiff was released from segregation on December 28, 2015. Altogether, Plaintiff was deprived of his prayer rug, Qur'an, and Kufi for about a month. (Doc. 1, p. 6).

Plaintiff seeks compensatory and punitive damages for the alleged violations of his rights. (Doc. 1, p. 7).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts. The parties and the Court will use these designations in all

---

[1] In this paragraph, Plaintiff does not refer to the property officer John Doe by his badge number. However, it appears that this John Doe is the same individual Plaintiff described earlier as "John Doe Badge # 10789," because Plaintiff refers to him as the "property C/O" and says that this person "returned" to his cell with additional items. Therefore, the Court shall assume that Plaintiff is referring to a single individual John Doe, with Badge # 10789, when he describes the events of December 15 and December 26, 2015. (Doc. 1, p. 6).

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment claim against Mayor, for disturbing Plaintiff's practice of his religion on November 28, 2015;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against John Doe #1 for failing to remedy the unsanitary conditions in Plaintiff's segregation cell on November 28, 2015;
>
> **Count 3:** Eighth Amendment claim against Watson, for denying Plaintiff a visit with his family members on November 30, 2015;
>
> **Count 4:** Fourteenth Amendment due process claim against Bridges, for failing to provide Plaintiff with a hearing after he was placed in investigative status in segregation on November 30, 2015;
>
> **Count 5:** First Amendment claim against John Doe (Badge # 10789) for depriving Plaintiff of his legal property for 18 days while Plaintiff was in segregation;
>
> **Count 6:** First Amendment claim against John Doe (Badge # 10789) for depriving Plaintiff of his religious items (prayer rug, Qur'an, and Kufi) between November 28 and December 28, 2015, while Plaintiff was in segregation.

As discussed below, Counts 2 and 6 survive review under § 1915A. However, Counts 1, 3, 4, and 5 fail to state a claim upon which relief may be granted, and will be dismissed. Further, because Counts 2 and 6 arose from separate incidents and involve different Defendants, Count 6 will be severed into a separate action. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

**Dismissal of Count 1 – Interference with Religious Practice – Defendant Mayor**

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47

5

(7th Cir. 1990); *see Al-Alamin v. Gramley*, 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). A prison regulation that impinges on an inmate's First Amendment rights is nevertheless valid "if it is reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Such interests include inmate security and the proper allocation of limited prison resources. *See id.* at 348, 352-53; *Turner*, 482 U.S. at 90; *Al-Alamin*, 926 F.2d at 686.

In this instance, Plaintiff does not claim that a prison regulation interfered with his right to practice his Islamic faith. Instead, he describes a single occasion when Defendant Mayor interrupted his prayers and, in a disrespectful manner, insisted that he halt his prayers and respond immediately to Mayor's inquiry. However, Plaintiff did not stop praying and only answered Mayor after he completed the Salah prayer. It is unclear whether Mayor took Plaintiff to segregation because of this incident, or whether the move to segregation was triggered by some other event.

While the Court does not condone Mayor's alleged behavior, this single, and apparently isolated incident does not rise to the level of a constitutional violation. By Plaintiff's own description, Mayor did not stop him from completing his prayers. While Mayor's interruption was no doubt annoying and disrespectful, Plaintiff does not allege that he suffered any actual injury from this incident. The adage *de minimis non curat lex* (the law does not concern itself with trifles) applies with the same force in civil rights litigation as in any other tort action, and in order to be actionable, a tort requires injury. *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982).

Accordingly, the First Amendment claim in **Count 1** against Defendant Mayor will be dismissed without prejudice, for failure to state a claim upon which relief may be granted.

**Count 2 – Unsanitary Cell Conditions – Defendant John Doe #1**

The Eighth Amendment prohibition of cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Two elements are required to establish a violation of the Eighth Amendment. The first – an objective element – requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer*, 511 U.S. at 834. The second component is a subjective element, and requires evidence establishing a defendant's culpable state of mind; deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

Plaintiff claims that the walls of his segregation cell were smeared with feces, the floor was contaminated with urine, and the cell lacked running water. Unsanitary conditions similar to these have been found to state a claim under the Eighth Amendment. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls).

While Plaintiff does not state whether these conditions persisted for the entire 30 days he spent in segregation, the Complaint satisfies the objective element of an Eighth Amendment claim at this stage.

With respect to the subjective element, Plaintiff alleges that he complained about the cell conditions to Defendant John Doe Correctional Officer #1 on November 28, 2015, soon after he was placed in the cell. John Doe #1 allegedly failed to take any steps to assist Plaintiff with respect to the conditions, and instead told him to talk to the C/O for Plaintiff's gallery. The Complaint does not disclose whether Plaintiff contacted his gallery C/O or any other official, and does not reveal whether anyone took steps to correct the problems in the cell. Nevertheless, John Doe #1's refusal to address the unsanitary conditions could amount to deliberate indifference. **Count 2**, therefore, merits further review.

Before this claim may proceed, however, Plaintiff must identify John Doe Correctional Officer #1 by name so that he may be served with notice of the action.

### Dismissal of Count 3 – Visitation Denial – Defendant Watson

Reasonable restrictions on prisoners' rights to have visitors, such as to punish an inmate for a disciplinary infraction, have withstood constitutional scrutiny. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (restrictions on inmates' visitors were rationally related to legitimate penological objectives and did not violate the Constitution). Moreover, "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989).

The exhibits attached to Plaintiff's Complaint indicate that Defendant Watson's decision to deny permission for Plaintiff's mother and sisters to visit the prison was based on a trespassing

incident involving them on November 28, 2015. (Doc. 1-1, pp. 6-8). The visitation restriction does not appear to have been imposed in order to punish Plaintiff. Relatedly, a subsequent letter (dated January 22, 2016) restored visitation privileges to one family member (Ambia Wilkie) after less than 2 months. (Doc. 1-1, p. 9).

A prison undoubtedly has the right to bar a particular individual from visiting the institution for reasons of safety and security. *Thompson*, 490 U.S. at 461. A trespassing offense, as cited in Watson's letters suspending the visitation privileges for these 3 family members, fall within that scope. The letters also described the procedure for requesting visiting privileges to be restored. In consideration of all these circumstances, the visitation restriction that affected Plaintiff's ability to receive visits from 3 family members did not violate Plaintiff's constitutional rights. Accordingly, **Count 3** will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 4 – Denial of Hearing – Defendant Bridges

Illinois statutes and correctional regulations do not place limitations on prison officials' discretion to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody. As such, there is no liberty interest implicated by an inmate's placement in these forms of segregation. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). Where a liberty interest is not involved, there is no constitutional requirement to follow due process procedures.

As grounds for his due process claim, Plaintiff invokes prison regulations which allegedly state that an interview must be provided to the inmate within 14 days of being placed in

investigative status. However, a federal due process claim is not implicated, even if a state regulation was violated. A federal court does not enforce state law or regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

For these reasons, **Count 4** fails to state a claim upon which relief may be granted, and will be dismissed.

**Dismissal of Count 5 – Deprivation of Legal Property – John Doe Officer (Badge # 10789)**

Plaintiff alleges that he was without his legal materials for 18 days after he was moved to the segregation cell. John Doe Officer (Badge # 10789) eventually delivered the materials to him. This John Doe is the only Defendant Plaintiff names in connection with this claim.

Plaintiff cites a prison rule directing prison officials to return legal paperwork to an inmate within 72 hours after he is placed in segregation, as the basis for his claim. However, as noted above under Count 4, the existence of a state regulation does not create a right that may be enforced in federal court. *Archie*, 847 F.2d at 1217. That said, the deprivation of an inmate's legal documents may amount to a constitutional violation if it prevents the inmate from accessing the courts. To state such a claim, a plaintiff must describe "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010).

In the instant case, Plaintiff does not proffer any allegations that describe an actual or potential limitation on his access to the courts. Therefore, **Count 5** shall be dismissed without prejudice for failure to state a claim.

**Count 6 – Deprivation of Religious Materials – John Doe Officer (Badge # 10789)**

Plaintiff asserts a claim against this defendant for his failure to return certain religious items to Plaintiff. "[P]rison officials may legitimately impose certain restrictions on the practice of religion in prison . . ." where there is a compelling interest. *Childs v. Duckworth*, 705 F.2d 915, 920 (7th Cir. 1983) (citations omitted). Legitimate penological interests include the preservation of security in prison, as well as economic concerns. *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). When these concerns are raised as justifications by prison officials for their actions that restrict the practice of religion, the Court looks at four factors to determine whether the restriction is constitutional:

> (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Ortiz*, 561 F.3d at 669 (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)). *See also Turner v. Safley*, 482 U.S. 78 (1987).

Additionally, a prison official who denies a prisoner's request for an accommodation that would enable him to freely practice his religion may run afoul of the prisoner's First Amendment rights. *See Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990); *see also Vinning-El v. Evans*, 657 F.3d 591, 593-94 (7th Cir. 2011); *Al-Alamin v. Gramley*, 926 F.2d 680, 686 and nn. 3-5 (7th Cir. 1991) (collecting cases). Here, Plaintiff maintains that his ability to practice his faith was impaired during the approximately 30 days that John Doe Officer (Badge # 10789) failed to return his religious items to him.

At this early stage, the claim in **Count 6** survives review under § 1915A. As with the claim in Count 2, however, Plaintiff must identify the unknown officer by name before the claim

may proceed.

**Dismissal of Warden Butler**

Plaintiff includes Kimberly Butler, the former Warden of Menard, in the caption and in his list of Defendants, but fails to mention her in the body of the Complaint. Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the Complaint, if any, are directed against him. Merely invoking the name of a potential defendant is insufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Moreover, in the case of a defendant in a supervisory position, the doctrine of *respondeat superior* (supervisory liability) is not applicable to § 1983 actions. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).

Plaintiff does not allege that Butler was in any way personally responsible for any alleged deprivation of his constitutional rights, and his narrative does not indicate that she took part in the events that gave rise to his claims. Accordingly, Butler will be dismissed from this action without prejudice.

**Severance of Claims & Defendants**

In addition to conducting a merits review under § 1915A, the Court must consider whether the surviving claims and parties may properly proceed in the same joint action. Under Rule 20(a)(2),[2] a "plaintiff may join multiple defendants in a single action only if plaintiff asserts

---

[2] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assoc's, Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017).

at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)).

From Plaintiff's description of the defendants and events giving rise to the claims in Counts 2 and 6, it appears that John Doe Correctional Officer #1, who failed to remedy the cell conditions on November 28, 2015 (Count 2) is a different individual from John Doe (Badge # 10789), who failed to return Plaintiff's religious items to him between December 15, 2015 and December 26, 2015 (Count 6). The claims arose from two separate transactions/occurrences, and present distinct legal and factual questions. Under Rule 20(a)(2) and *George*, it would be improper for Counts 2 and 6 to proceed in the same action. Therefore, the Court will sever Count 6 from this action and open a new case with a newly-assigned case number for that claim. Plaintiff will be assessed an additional filing fee for the new severed case.

**Identification of Unknown Defendants**

Because both surviving claims involve only unknown defendants, these individuals must be identified with particularity before service of the Complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the

identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

To that end, the Clerk will be directed to add the current Warden of Menard (Official Capacity only) as a party to this action as well as to the severed action. The Warden shall be responsible for responding to discovery aimed at identifying the unknown Defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Defendant John Doe Correctional Officer #1 is discovered, Plaintiff shall file a motion in this action to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint. Plaintiff shall follow the same procedure to substitute the proper name for John Doe (Badge # 10789) in the severed action.

### Pending Motions

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **TERMINATED AS MOOT**. No such motion is necessary for a Plaintiff who has been granted leave to proceed *in forma pauperis* ("IFP"). The Court shall order service on all named defendants who remain in the action following threshold review under § 1915A. 28 U.S.C. § 1915(d).

### Disposition

The Clerk is **DIRECTED** to add the **WARDEN of MENARD CORRECTIONAL CENTER (Official Capacity only)** as a Defendant in this action. Further, the Clerk is **DIRECTED** to modify the Defendant designated as "John Doe Correctional Officer" to **JOHN DOE CORRECTIONAL OFFICER #1**.

**COUNTS 1, 3, 4, and 5** are **DISMISSED** without prejudice for failure to state a claim

upon which relief may be granted. Defendants **BUTLER, WATSON, BRIDGES,** and **MAYOR** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 20(a)(2), Plaintiff's claim for denial of his religious materials in **COUNT 6** is severed into a new case. That new case will be: Claims against **JOHN DOE (BADGE # 10789)**, and the **WARDEN of MENARD CORRECTIONAL CENTER (Official Capacity only)**.

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order
(2) The Original Complaint (Doc. 1)
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2)
(4) Plaintiff's motion for recruitment of counsel (Doc. 3)

Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case.

Because this Memorandum and Order contains the §1915A merits review of the severed Count 6, referral may be made to the magistrate judge and service may be ordered on the Warden of Menard in the second severed case, as soon as the new case is opened and the judge assignment is made. No service shall be ordered on the John Doe (Badge # 10789) until such time as Plaintiff identifies him by name and files a motion in the severed case, to substitute the newly identified Defendant in place of the generic designation in the case caption and throughout the Complaint. Plaintiff is **ADVISED** that it is his responsibility to provide the name and service address for this individual.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 2 against JOHN DOE CORRECTIONAL OFFICER #1 and the WARDEN of MENARD CORRECTIONAL CENTER (Official Capacity)*, for confining Plaintiff in an unsanitary cell on November 28, 2015. This case shall now be captioned as: **RONALD M. VAN PELT, Plaintiff,**

**vs. JOHN DOE CORRECTIONAL OFFICER #1 and the WARDEN of MENARD CORRECTIONAL CENTER (Official Capacity), Defendants.**

As to **COUNT 2**, which remains in the instant case, the Clerk of Court shall prepare for **WARDEN of MENARD CORRECTIONAL CENTER (Official Capacity)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Service shall not be made on Defendant **JOHN DOE CORRECTIONAL OFFICER #1** until such time as Plaintiff has identified him by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States**

**Magistrate Judge Reona J. Daly** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 14, 2018**

s/ STACI M. YANDLE  
United States District Judge