IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD M. VAN PELT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-CV-423-MAB |
| | ) |
| JEREMY KRANAWETTER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendant Jeremy Kranawetter (Doc. 45). The Court held an evidentiary hearing on the motion pursuant to *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), on February 14, 2020 (Doc. 62). For the reasons set forth on the record and below, the motion is denied.

### BACKGROUND

This case was severed from *Van Pelt v. John Doe Correctional Officer #1*, SDIL Case No. 17-cv-1226 -RJD on February 16, 2018 (Doc. 1; Doc. 6). It contains the claim designated as Count 6 in the original case (Doc. 1, Doc. 6), which is a First Amendment claim against John Doe (Badge # 10789) for depriving Plaintiff of his religious items (prayer rug, Qur'an, and Kufi) between November 28 and December 28, 2015, while Plaintiff was in segregation at Menard Correctional Center (Doc. 6).

The John Doe Defendant was identified as Jeremy Kranawetter in March 2019 (Docs. 25, 26). Defendant Kranawetter appeared in this matter and filed his answer in July 2019 (Doc. 41). Two months later, he filed a motion for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies as to them prior to filing suit (Doc. 45). Plaintiff filed a response on October 28, 2019 (Doc. 51). Defendant did not file a reply. An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on February 14, 2020 (Doc. 62). Plaintiff is the only witness who testified at the hearing.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing there is a genuine issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Normally, the court cannot resolve factual disputes on a motion for summary judgment; they must be decided by a jury. *E.g.*, *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) ("[A] trial is the standard means of resolving factual disputes . . . .") The opposite is true, however, when the motion for summary judgment pertains to a prisoner's failure to exhaust. The Seventh Circuit has instructed courts to conduct an evidentiary hearing in order to resolve contested issues of fact regarding a prisoner's purported failure to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts*, 745 F.3d at 234.

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). The purpose of the exhaustion requirement is to "alert prison officials to perceived problems and to enable them to take corrective action without first incurring the hassle and expense of litigation." *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam) (citations omitted). *See also Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq.* (2003).[1] For non-emergency grievances, the IDOC has a three-step process that prisoners are required to follow in order to exhaust administrative remedies. At step one, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *Id.* at § 504.810; *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). If the counselor is unable to resolve the grievance, the inmate must submit a written grievance to the grievance officer within 60 days of the incident. 20 ILL. ADMIN. CODE § 504.810 (2003); *Wilborn*, 881 F.3d at 1004. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Warden, who then issues a written decision "within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830 (2003). After receiving the warden's decision, the prisoner has thirty days to appeal to the ARB. *Id.* at § 504.850. The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *Id.* at § 504.850. Administrative remedies are usually deemed fully

---

[1] Illinois amended its grievance procedures, effective April 2017. *See* 41 Ill. Reg. 3909–10 (March 31, 2017) (amending 20 Ill. Admin. Code § 504.810). However, the grievances at issue here were written in 2015–2016, well before the amended grievance procedures took effect. Consequently, the previous version of the grievance procedures—the April 2003 version—applies here. *See* 27 Ill. Reg. 6285–86 (April 11, 2003) (promulgating the version of 20 Ill. Admin. Code § 504.810 in effect from April 2003 through April 2017). That is the version cited and referred to throughout this Order.

exhausted after the prisoner receives a copy of the ARB's decision at step three.

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners primarily when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

**FACTUAL BACKGROUND**

Plaintiff was placed in segregation on November 28, 2015 and released on December 28, 2015 (Doc. 2). He claims to have encountered a multitude of problems while in segregation, (Doc. 2), including being denied his prayer rug, Qur'an, and Kufi, which is the subject of this lawsuit. The grievance records submitted by Defendant show that there is one grievance related to the denial of religious items (*see* Doc. 46-1). That grievance was dated December 15, 2015 (*Id.* at pp. 25–27). In this grievance, Plaintiff states he received his personal property in segregation on December 15th, but he did not receive his prayer rug even though it was on the inventory list. The correctional officer told Plaintiff he would return with the prayer rug in a few minutes, but he never came back. Plaintiff inquired about his prayer rug everyday but did not receive it until December 27, 2015, one day before being released from segregation. Even though the grievance was dated December 15, 2015, Plaintiff did not sign it until January 17, 2016 (*see id.* at p. 26; Doc. 51, p. 1).

According to Defendant, Plaintiff sent the grievance directly to the ARB, where it was received on June 8, 2016 (Doc. 46, p. 3; Doc. 46-1, p. 25). The ARB responded on July 9, 2016, indicating that the grievance was being returned because it was not submitted in the timeframe outlined in Department Rule 504 (Doc. 46-1, p. 25).[2]

In response to Defendant's motion, Plaintiff told a different story. He asserted that he submitted the grievance "in the counselors box" on the same day he signed it: January 17, 2016, but never got a response (Doc. 51, p. 1). In fact, Plaintiff claimed he submitted eight grievances on or around January 17, 2016 but only six came back from his counselor (Doc. 51, p. 2). Plaintiff told a similar story in an affidavit dated May 26, 2016 that he attached to the complaint in this matter (Doc. 2-1, p. 28). He stated in the affidavit that he submitted six grievances "in the Menard Correctional Center counselor institutional mail box" on January 20, 2016, but only got responses to four of them (*Id.*).[3] In particular, he

---

[2] The ARB's response also indicated a second reason for returning the grievance: personal property issues have to be reviewed first at the prison (Doc. 46-1, p. 25). Defendant, however, indicates that "[s]ince this was a personal property issues [sic] Plaintiff was allowed to send his grievance straight to the ARB." (Doc. 46, p. 3). Defendant does not, however, cite to any legal authority to support his statement (*see id.*), and in fact, his statement is directly contradicted by the relevant regulation, which provides:
>Offenders shall submit grievances directly to the Administrative Review Board when grieving:
>1) Decisions regarding protective custody placement, including continued placement in or release from protective custody.
>2) Decisions regarding the involuntary administration of psychotropic medication.
>3) Decisions regarding disciplinary proceedings that were made at a facility other than the facility where the offender is currently assigned.
>4) Other issues except personal property issues that pertain to a facility other than the facility where the offender is currently assigned.

20 ILL. ADMIN. CODE § 504.870(a) (2003).

[3] The Court finds the slight discrepancies in Plaintiff's story regarding the number of grievances he submitted and the date on which he submitted them are inconsequential in this instance because, by and large, Plaintiff's story has remained the same: he submitted multiple grievances at Menard on or around the same time in mid-January 2016 related to his time in segregation, and he did not receive responses to two of them.

did not get responses to the grievance regarding his prayer rug—which is the grievance at issue—or his grievance regarding his lack of access to his legal papers while in segregation (*see* Doc. 46-1, pp. 22–27).

According to Plaintiff, he did not receive the counselor's four responses until May 17, 2016, after he had been transferred to Pinckneyville (Doc. 51, p. 2). Since he was already at a different institution, he could not submit them to the grievance officer (Doc. 2-1, p. 28). So he sent all six of his grievances—the four that were responded to and the two that weren't—along with the affidavit explaining the situation to the ARB, where the documents were received on June 8, 2016 (Doc. 46-1, pp. 17–33). The ARB responded to all six grievances on July 9, 2016, stating they were being returned because they were not submitted in the timeframe outlined in Department Rule 504 (*Id.*).

At the *Pavey* hearing, counsel for the Defendant only questioned Plaintiff about his grievance concerning his legal property, which is unrelated to Plaintiff's claim in this lawsuit. She did not question him about the grievance concerning the prayer rug. Furthermore, when asked if he submitted the grievance directly to the ARB, Plaintiff answered "No, that's not correct." Defense counsel did not, however, ask any follow-up questions as to why that was not correct or ask Plaintiff for his version of events.

When it was Plaintiff's turn to tell his story, he indicated that he submitted the grievance about the prayer rug on the date he signed it by placing it in the institutional grievance box. He could not recall whether or not he received a response from his counselor to this particular grievance. He once again stated that he submitted a number of grievances and only got responses to some of them while others "mysteriously came

up missing." He just was not able to recall which grievances went missing.[4] For the responses that he did receive, he testified that he did not get them until April 27, 2016, after he had been transferred to Pinckneyville. He then submitted them to the ARB, who returned them for being untimely. Defense counsel did not conduct a redirect examination of Plaintiff after he testified.

## DISCUSSION

It is undisputed that there is only one grievance relevant to this lawsuit. This grievance was dated December 15, 2015 and signed by Plaintiff on January 17, 2016. According to Plaintiff, he submitted the grievance to his counselor in January 2016 but never received a response. His story has remained consistent throughout the course of this lawsuit (*see* Docs. 2, 51), and has gone completely unacknowledged and unchallenged by the Defendant. Indeed, Defendant offered no evidence, asked no questions, and made no written or oral arguments to contradict or poke holes in Plaintiff's story. Given Plaintiff's uncontroverted testimony, the Court finds his story credible that he submitted the grievance in January 2016 within the requisite 60-day time period but never received a response from his counselor. The failure to respond to Plaintiff's grievance rendered the administrative grievance process unavailable to him and he is therefore deemed to have exhausted his administrative remedies. *Dole v. Chandler*, 438

---

[4] The Court notes that Plaintiff appeared at the hearing by video from Pinckneyville Correctional Center. He did not have any papers with him during the hearing.

F.3d 804, 809 (7th Cir. 2006); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The motion for summary judgment is denied.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by Defendant Jeremy Kranawetter (Doc. 45) is **DENIED.**

The stay on merits-based discovery (*see* Doc. 14, 49) is **LIFTED**. The deadline for discovery is **RESET** to August 14, 2020. The deadline for dispositive motions is **RESET** to September 14, 2020. All other instructions and guidelines regarding discovery that were set forth in the original scheduling order remain in effect (Doc. 14). The Court will set a status conference following a ruling on dispositive motions to select a firm trial date, if necessary.

The Clerk of Court is **DIRECTED** to mail Plaintiff a copy of the original scheduling order (Doc. 14).

**IT IS SO ORDERED.**

**DATED: February 18, 2020**

                                                                     s/ Mark A. Beatty
                                                                      **MARK A. BEATTY**
                                                                      **United States Magistrate Judge**