IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD M. VAN PELT, #R00514, | |
| Plaintiff, | |
| v. | Case No. 18-cv-00423-SPM |
| JEREMY KRANAWETTER, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by defendant Jeremy Kranawetter ("Kranawetter") (Doc. 66). For the following reasons, the Court grants the Motion for Summary Judgment.

## BACKGROUND

Plaintiff Ronald Van Pelt ("Van Pelt") commenced this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights (Doc. 2). On February 16, 2018, the Court issued an Order (Doc. 1) severing Van Pelt's original claims into separate actions, and the claim regarding deprivation of his religious items during his time in segregation at Menard Correctional Center ("Menard") became this action.

Van Pelt alleges that he was placed in a segregation cell on November 28, 2015. He claims that his personal property was delivered to him on December 15, 2015; however, his prayer rug, Qur'an and Kufi were missing (Doc. 1, p. 4). Van Pelt asserts that he advised Kranawetter who was identified as the officer who delivered the property, about the missing items, and was advised that the officer would return with

the religious items in a few minutes, but he never did (*Id*.). On December 27, 2015, the day before he was released from segregation, Kranawetter brought him his prayer rug, but he did not receive his Qu'ran or Kufi before being released from segregation on December 28, 2015 (*Id.*).

Van Pelt is proceeding on the following claim:

> First Amendment claim against Jeremy Kranawetter for depriving Plaintiff of his religious items (prayer rug,, Qu'ran, and Kufi) between November 28, 2015 and December 28, 2015, while Plaintiff was in segregation.

On December 14, 2020, Kranawetter filed his motion for summary judgment on the merits of Van Pelt's claim, along with supporting memorandum of law (Docs. 66-67). On February 22, 2021, Van Pelt filed his response (Doc. 71). Kranawetter did not file a reply.

## STATEMENT OF FACTS

The majority of the material facts set forth in the motion are undisputed and this Court will attempt to clarify this matter.[1] Van Pelt is currently an inmate at Pinkneyville Correctional Center within the Illinois Department of Corrections, but at all times relevant to this matter, was incarcerated at Menard. He filed his complaint pursuant to 42 U.S.C. §1983 and contends that Kranawetter violated his constitutional rights by interfering with his religious practice. In 2006, Van Pelt declared Muslim as his religion. Van Pelt has alleged a First Amendment claim against Kranawetter for deprivation of his prayer rug, Qu'ran and Kufi, which is religious headgear worn by Muslins when praying.

---

[1] In an effort to exclude immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the briefs provided by the parties herein. (Docs. 67, 71).

On November 28, 2016, Van Pelt was placed in segregation. Prior to being placed in segregation, Van Pelt practiced Jumu'ah service. He was unable to attend while in segregation because when in segregation, inmates are unable to participate in specific religious services.

Van Pelt was placed in segregation for 30 days for not following a lieutenant's direct order because "he was making salat" (praying). Plaintiff did not answer the lieutenant until he was done praying, so he received a ticket for the safety and security of the institution.

Some property is allowed while in segregation, but not hard back books. Additional items are allowed in segregation depending on how much time the inmate is there. Although Van Pelt was placed in segregation on November 28, 2015, he did not receive his box until December 15, 2015. Van Pelt inquired about his property box before he received it. Kranawetter was a Correctional Officer at Menard and he brought Van Pelt his box. Van Pelt's religious items, including his prayer rug, Kufi, and Qu'ran were not in his box. Van Pelt did not see Kranawetter take anything from the box. Van Pelt told Kranawetter about the missing religious items and Kranawetter told him he would check into it. When Kranawetter did not return, Van Pelt spoke with at least one other officer about his missing religious property.

Van Pelt could have requested a facility copy of the Qu'ran while he was in segregation, but he did not. Van Pelt also could have prayed without his prayer rug and Kufi, but said his body was not pure due to the unclean cell.[2] Inmates in

---

[2] Van Pelt has a separate Eighth Amendment action for the conditions of his cell in segregation which was severed from this action on February 16, 2018 (17-cv-1226-SMY); this case only pertains to the alleged First Amendment violations for deprivation of religious items.

Page 3 of 7

segregation are allowed to use religious items while in segregation; however, the inmate does not pack his own box of "allowed property". An inmate worker packs the box, which is delivered by staff. There is no indication as to who packed Van Pelt's box in this case. If an item is missing, the inmate can request it and it will be brought to him so long as it is "allowed property". Van Pelt received his missing items on December 27, 2015.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

## ANALYSIS

### I. Law

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." (1979). Inmates clearly retain protections afforded by the First Amendment, *Pell v. Procunier,* 417 U.S. 817, 822 (1974), including its directive that no law shall prohibit the free exercise of religion. *Cruz v. Beto,* 405 U.S. 319 (1972) (*per curiam*). However, lawful incarceration brings about

the necessary withdrawal or limitation of many privileges and rights. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security. *Pell v. Procunier,* 417 U.S. at 822–823.

Prisons must permit inmates the reasonable opportunity to exercise religious freedom. *Cruz,* 405 U.S. at 322. However, this right is not absolute; a prison is required to make "only reasonable efforts" to provide "some opportunity" for religious practice. *Alston v. DeBruyn,* 13 F.3d 1036, 1040-1041 (7th Cir. 1994). Prisons cannot discriminate against a particular religion and the efforts of prison administrators must be evenhanded and neutral. *Turner v. Safley,* 482 U.S. 78, 90 (1987); *Al-Alamin v. Gramley,* 926 F.2d 680, 686 (7th Cir. 1991)

## II. Discussion

Menard did not restrict Van Pelt's religious freedoms. Van Pelt cannot show that he was denied his first amendment right to practice his religion. He also cannot show that Kranawetter packed his property box and was personally responsible for depriving him of his constitutional right to practice his religion. Finally, Kranawetter is entitled to qualified immunity.

In this case, Van Pelt was taken directly to segregation and was not allowed to take any items with him. Menard had legitimate penological interests in not allowing Van Pelt to interact with other inmates before going to segregation so as to diffuse any situation before it escalated. Another inmate was responsible for packing Van Pelt's property.

While Van Pelt was in segregation, he was able to pray without his religious items. He testified that the uncleanliness and unsanitary condition of his cell, which is not part of this complaint, were the reasons why he "couldn't make prayer" (Doc. 71, ¶6). He further indicated that he never asked the Chaplain for a Qu'ran, but he did ask around and "got a Qu'ran while I was in there from somebody" (Doc. 67-1, p. 66). With respect to the prayer rug and Kufi, Van Pelt testified that he could pray and that he was "going to try to make way with the best things that you can get, it's not like you can't do it if you don't have those things, it's like you just have to work around and work with what you have" (*Id.*). As a Muslim, "you're supposed to try to practice your religion to the best of your ability, even though you don't have certain things" (Doc. 67-1, p. 74).

On December 27, 2015, Van Pelt received his prayer rug, Kufi and Qu'ran (Doc. 67-1, p. 61). He still has those items today (Doc. 67-1, p. 76).

Kranawetter provided an Affidavit in this case wherein he admitted that he delivered the property box to Van Pelt (Doc. 67-2). He explained that inmates only received "allowed property", which generally included religious items; however, the person packing the box may not have been certain as to what property the inmate needed or wanted while in segregation (*Id*). Van Pelt has not alleged that Kranawetter packed the box and Kranawetter affirmed that he would not have purposely deprived inmate Van Pelt of any religious property while in segregation (*Id.*).

Finally, Kranawetter is entitled to qualified immunity. Officers are afforded the extra layer of protection of qualified immunity. *Thayer v. Chiczerski,* 705 F.3d

237, 247 (7th Cir. 2012). The doctrine of qualified immunity shields officers from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Van Pelt alleges that the deprivation of his Kufi, Qu'ran and prayer rug while he was in solitary was in violation of his First Amendment right of freedom of religion; however, this is untrue. He was able to pray and practice his religion, and he was ultimately provided with his religious items. Any alleged hindrance was caused by the condition of the cell itself, which is the subject of a separate cause of action.

Kranawetter did not violate any statutory or constitutional right. He delivered a box to Van Pelt. There has been no showing that he packed the box or that he removed the items from the box for any religious reason whatsoever.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 4, 2021**

/s/ Stephen P. McGlynn
STEPHEN P. McGLYNN
U.S. District Judge
